Filed 5/28/26  Busch v. Morgan CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| TIMOTHY R. BUSCH, as Trustee, etc.,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>GLORIA MORGAN,<br><br>    Defendant and Appellant. | A171532<br><br>(Alameda County<br>Super. Ct. No. 22CV009328) |

Defendant Gloria Morgan (Gloria[1]) appeals from an interlocutory judgment entered after bench trial ordering the partition by sale of property co-owned by Gloria and the Theresa Morgan 2022 Irrevocable Trust Dated February 23, 2022 (Theresa Decanted Trust), of which plaintiff Timothy R. Busch is the trustee.  Gloria avers Busch lacked authority to litigate the partition, the judgment is void for failure to join indispensable parties, and the trial court erred by refusing to apply the Partition of Real Property Act (Code Civ. Proc., § 874.311 et seq.; PRPA; further undesignated statutory references are to this code) or the Uniform Partition of Heirs Property Act (former § 874.311 et seq.; UPHPA).  We affirm.

_____

[1] For ease of comprehension and meaning no disrespect, we refer to Gloria Morgan, Theresa Morgan, Joe Morgan, Angela Morgan, and Lisa Morgan by their first names throughout this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

The property at issue in the partition action is a single-family residence in Alameda County (the residence), which was Gloria's family residence while she was married to her then-husband, Joe Morgan (Joe). Gloria and Joe divorced in 1989, and Joe subsequently married his second wife, Theresa Morgan (Theresa). Joe died in 2020.

To assist in understanding the issues on appeal, we explain how the ownership interests in the residence passed over time as well as the numerous trusts involved in the case.

Gloria and Joe entered into a marital settlement agreement, which contained a "Further Judgment on Reserved Issues" governing the distribution of property (property settlement agreement), including the residence. Under the property settlement agreement, Gloria was entitled to exclusive use and occupancy of the residence until it was sold. Further, until July 1, 1993, Gloria had the sole and exclusive right to determine whether to sell the residence; after that date, Joe retained that right, provided he gave Gloria 60 days' notice. Gloria and Joe remained co-owners of the residence, each with an undivided one-half interest in the residence, and were each entitled to one-half of the proceeds from the sale of the residence. The agreement also set forth various terms governing any sale. Gloria currently lives at the residence.

In 2012, Joe conveyed his undivided one-half interest in the residence to the Joe L. Morgan Irrevocable Trust II (Joe Trust). This resulted in the residence being equally co-owned by the Joe Trust and Gloria.

*Joe Trust*

The Joe Trust was established in 1991 and contained the following relevant provisions.

2

The beneficiaries were Theresa, Gloria, and Joe's children. This included Joe's two adult children with Gloria, Angela Morgan (Angela) and Lisa Morgan (Lisa), who were listed as "Special Beneficiaries."

Upon Joe's death, the remaining trust estate was to be distributed as follows. The trustee was "instructed to set aside in a separate sub-Trust, for the sole benefit of [Gloria], a lump sum of FIVE HUNDRED THOUSAND DOLLARS ($500,000.00)," subject to certain restrictions. The trustee was "instructed to set aside in two (2) separate sub-Trusts, a sum of SEVEN HUNDRED FIFTY THOUSAND DOLLARS ($750,000.00) in each sub-Trust, to be held for the sole benefit of each of the Special Beneficiaries," i.e., Angela and Lisa. Finally, "[t]he remaining body or corpus of the Trust Estate shall be allocated into a separate trust for the benefit of [Theresa]."

The Joe Trust appointed a trustee, Tom Reich, and named Busch as the sole successor trustee. After Reich resigned in 1995, Busch succeeded him and continued to serve as trustee until 2022, the details of which we explain in greater detail below.

Regarding the removal of a trustee, the Joe Trust provided: "A majority of the adult Beneficiaries may remove a Trustee for any reason, with or without cause, by providing notice to the Trustee and the Successor Trustee. Upon receiving such notice, Trustee shall convey the Trust Estate to his or her successor."

As previously noted, Joe passed away in 2020.

*2022 Proceedings*

On February 9, 2022, Gloria, Angela, and Lisa sent a letter via counsel to Busch's counsel (February 9 letter) seeking to remove Busch as trustee of the Joe Trust. Specifically, the letter stated they were electing to remove Busch under the provision of the Joe Trust permitting the majority of adult

3

beneficiaries to remove a trustee " 'for any reason, with or without cause,' " and instructed Busch "to marshal all the records of the Trust so they can be passed to the incoming Trustee who shall be appointed within the next sixty (60) days."  The February 9 letter did not identify any successor trustee or provide notice to any such trustee.

On February 16, 2022, one week after receiving the February 9 letter, Busch began the process of winding up the Joe Trust.  Specifically, in accordance with the Joe Trust's instructions for distributing the trust estate upon Joe's death, Busch created sub-trusts for Gloria, Lisa, Angela, and Theresa.

As trustee of the Joe Trust, Busch funded Gloria's sub-trust with $500,000, Lisa's sub-trust with $750,000, and Angela's sub-trust with $750,000 from the Joe Trust estate.  Busch funded Theresa's sub-trust, the "Theresa Morgan Irrevocable Trust created under the Joe L. Morgan Irrevocable Trust II" (Theresa Sub-Trust), with all residual property of the Joe Trust, including the Joe Trust's undivided one-half interest in the residence.

Upon their creation, Busch served as trustee of each sub-trust, but he intended for the new successor trustee selected by Gloria and her family to take over as trustee for all four sub-trusts.

However, Theresa did not want a trustee who was selected by Gloria, so she asked Busch to decant her trust under the Uniform Trust Decanting Act (Prob. Code, § 19501 et seq.).  On February 23, 2022, Busch created the Theresa Decanted Trust, of which he also serves as trustee, and decanted the Theresa Sub-Trust into the Theresa Decanted Trust.  As part of the decantation, Busch transferred the Theresa Sub-Trust's undivided one-half interest in the residence to the Theresa Decanted Trust.

4

As a result of the above actions, the residence was co-owned by Gloria and the Theresa Decanted Trust, each holding an undivided one-half interest in the property as tenants in common.

On March 21, 2022, Busch's counsel responded to the February 9 letter, stating that letter was "insufficient to cause Mr. Busch to be removed at this time," but also indicating Busch had "no interest in serving as trustee in a situation where some beneficiaries do not want him to so serve." Accordingly, the response served as Busch's "formal, voluntary resignation as trustee of the three sub-trusts established for the benefit of Gloria, Angela, and Lisa, respectively."

On May 2, 2022, a successor trustee, Love Miller, was identified for the sub-trusts for Gloria, Angela, and Lisa. Those sub-trusts were subsequently transferred to Miller.

*Partition Action*

In April 2022, as trustee of the Theresa Decanted Trust, Busch petitioned the court for partition by sale of the residence. Gloria is the sole named defendant in the partition action. The petition listed numerous liens and encumbrances on the residence, including a $1.25 million loan secured by the residence provided by Fremont Bank.

In a pretrial ruling, the court found the action was not subject to PRPA because that statute only applies to actions filed on or after January 2023.

In May 2024, the case proceeded to bench trial. Although it was not transcribed, both parties' posttrial statements of facts indicate the only witness, Busch, provided testimony consistent with the above factual summary.

The trial court found in favor of Busch and ordered the partition by sale of the residence, finding sale and division of the proceeds more equitable than

5

division of the property because it is a single-family residence. As pertinent to the issues on appeal, the court found Busch had full authority to take the actions in February 2022 regarding creating and funding the sub-trusts and decanting the Theresa Sub-Trust to the Theresa Decanted Trust. Further, because Gloria and Busch, as trustee of the Theresa Decanted Trust, were the only owners of the residence, the court rejected Gloria's assertion that all interested parties had not been included in the action. Finally, the court found the residence is not " 'heirs property' " under UPHPA, the predecessor statute to PRPA, because the property settlement agreement constituted "an agreement in a record binding the cotenants which governs the partition of the property," and the residence was therefore subject to partition.

The court entered an interlocutory judgment ordering the partition by sale of the residence. Gloria appealed.

### DISCUSSION

In a partition action, if the court finds the plaintiff is entitled to partition, it issues an interlocutory judgment that determines the interests of the parties in the property and orders its partition. (§ 872.720, subd. (a).)

The interlocutory judgment typically decides the manner of partition as well. (See § 872.720, subd. (a).) As relevant here, the court may order the property sold and the proceeds divided among the parties if it concludes doing so would be more equitable than physical division of the property. (§ 872.820, subd. (b); *Cummings v. Dessel* (2017) 13 Cal.App.5th 589, 597.)

We review an interlocutory judgment of partition for abuse of discretion. (*Cummings v. Dessel, supra*, 13 Cal.App.5th at p. 597.) "Under that standard, '[t]he trial court's "application of the law to the facts is reversible only if arbitrary and capricious." ' [Citations.] '[A] disposition that rests on an error of law [also] constitutes an abuse of discretion.' " (*Ibid*.)

6

Gloria challenges the partition judgment on three grounds.  First, she argues Busch lacked authority to litigate the partition action after the February 9 letter sought to remove him as trustee of the Joe Trust.  Second, she asserts the judgment is void because Busch failed to join certain parties to the action.  Third, she avers the court erroneously concluded PRPA and UPHPA did not apply to the action.  We address each issue in turn and find no error in the judgment.

## I.  Gloria Fails To Show Busch's February 2022 Actions Were Unauthorized

Gloria first challenges the trial court's finding that Busch retained authority to create the sub-trusts, decant the Theresa Sub-Trust into the Theresa Decanted Trust, and initiate the partition action.  She argues the February 9 letter served to validly remove Busch as trustee of the Joe Trust under the terms of the trust instrument and his subsequent actions in February 2022 exceeded his authority as a removed trustee.

Probate Code section 15642, subdivision (a), sets forth the only three methods by which a trustee may be removed: "in accordance with the trust instrument, by the court on its own motion, or on petition of a settlor, cotrustee, or beneficiary under [Probate Code] Section 17200."  After a trustee is removed, he or she "has the powers reasonably necessary under the circumstances to preserve the trust property until it is delivered to the successor trustee and to perform actions necessary to complete the . . . removed trustee's administration of the trust."  (Prob. Code, § 15644.)

We conclude the trial court did not abuse its discretion in finding Busch acted within his authority when taking the challenged actions in February 2022.  The Joe Trust instrument—the only way in which Gloria asserts Busch was removed as trustee—expressly provides that a majority of adult

7

beneficiaries may remove a trustee "by providing notice to the Trustee *and* the Successor Trustee" (italics added) and that, "[u]pon receiving such notice, Trustee shall convey the Trust Estate to his or her successor."

However, the February 9 letter plainly did not name or provide notice to any successor trustee, instead stating such trustee "shall be appointed within the next sixty (60) days." Further, as the trial court found, Miller was not identified as a successor trustee until May 2, 2022, nearly three months after the February 9 letter. On these facts, the court could find the February 9 letter did not remove Busch as trustee "in accordance with the trust instrument" (Prob. Code, § 15642, subd. (a)) and that he therefore retained authority to create the sub-trusts and initiate the partition action prior to resigning as trustee in March 2022. That authority included Busch's ability to fund the sub-trusts according to the Joe Trust's terms, specifically, funding the sub-trusts for Gloria, Angela, and Lisa with their respective lump sums and transferring the remainder of the Joe Trust's estate (including the one-half interest in the residence) to the Theresa Sub-Trust. In addition, as trustee of the Theresa Sub-Trust, and in accordance with Theresa's wishes, Busch had authority to transfer the one-half interest in the residence to the Theresa Decanted Trust.

Accordingly, the court did not abuse its discretion in finding Busch acted within his authority as trustee when taking the challenged actions in February 2022.

## II. The Judgment Is Not Void for Lack of Joinder

In litigating a partition action, the plaintiff must join as defendants all persons who have a recorded interest "in the estate as to which partition is sought," as well as those whom the plaintiff knows claim an interest in the

8

property, including lienholders.  (§ 872.510; see 12 Witkin, Summary of Cal. Law (11th ed. 2025) Real Property, § 66.)

Gloria asserts the partition judgment is void for lack of jurisdiction because Busch failed to join allegedly indispensable parties to the action. Primarily, she contends Busch was required to join Angela and Lisa as they were beneficiaries of the Joe Trust.

However, Angela and Lisa did not have a claimed interest in the residence for purposes of section 872.510.  Although they were "Special Beneficiaries" of the Joe Trust, they were entitled under that trust only to payments of $750,000 each—which they received in their sub-trusts in February 2022.  Gloria fails to show how Angela and Lisa were entitled to any other assets of the Joe Trust, including its one-half undivided interest in the residence, which, as previously explained, was properly transferred by Busch to the Theresa Sub-Trust under the terms of the Joe Trust (before being transferred to the Theresa Decanted Trust).  Therefore, Angela and Lisa did not have an interest "in the estate as to which partition is sought" (§ 872.510), and the trial court properly concluded Busch was not required to join them to the action.

Gloria also asserts the judgment is void for failure to join Fremont Bank, which provided the $1.25 million loan secured by the residence, or a "representative of Joe's estate," because the estate may be liable for repayment on that loan.  We disagree.

Section 874.225 provides that, subject to exceptions not pertinent here, the judgment in a partition action "does not affect a claim in the property or part thereof" of nonjoined interest holders if the claim was either recorded, or known to the plaintiff, when judgment was entered.

9

Although lienholders, including Fremont Bank, apparently should have been joined under section 872.510, Gloria does not show that the failure to do so voided the judgment. We note the petition expressly listed several liens on the residence, including the $1.25 million loan provided by Fremont Bank. Hence, that loan was clearly recorded and known to Busch when the judgment was entered, and Gloria fails to demonstrate that either Fremont Bank or Joe's estate lost any claim by Busch's failure to join them in the litigation. (See § 874.225.) Moreover, nothing in section 874.225 suggests the failure to join an interest holder voids an interlocutory judgment.

Finally, even assuming, arguendo, the petition failed to join an indispensable party, Gloria's contention that any such failure deprived the trial court of jurisdiction to order partition is unavailing. (See *Doe v. Regents of University of California* (2022) 80 Cal.App.5th 282, 305–307 [rejecting contention that failure to join indispensable party is a jurisdictional defect rendering judgment void for lack of jurisdiction].) Thus, the judgment is not void on joinder grounds.

## III. The Court Did Not Err In Concluding Neither PRPA nor UPHPA Applies to the Action

Gloria argues the trial court erred when it concluded PRPA and UPHPA do not apply to the action. We are not convinced.

As an initial matter, Gloria appears to assert PRPA applied, yet she acknowledges the partition action was filed in April 2022, before PRPA's effective date. Indeed, by its own terms, PRPA applies only to "actions for partition of real property filed on or after January 1, 2023." (§ 874.311, subd. (c).) Thus, PRPA does not apply to the action.

10

Gloria avers that, even under UPHPA (which she apparently refers to as "the earlier PRPA framework"), the court erred in concluding the property was not "heirs property."

UPHPA applies to actions "filed on or after January 1, 2022, for partition of real property that is heirs property." (Stats. 2021, ch. 119, § 1; former § 872.020, subd. (b).) UPHPA defined "heirs property" as "real property held in tenancy in common" that meets various requirements, including, as relevant here, that "[t]here is no agreement in a record binding all the cotenants which governs the partition of the property." (Stats. 2021, ch. 119, § 2; former § 874.312, subd. (e)(1).)

The court did not abuse its discretion in finding the property settlement agreement constituted an agreement in the record binding all the cotenants and governing partition of the residence. The property settlement agreement expressly concerned the interests in the residence (which, at the time, belonged to Gloria and Joe), and governed who had the right to sell the residence. Specifically, Gloria retained the "the sole and exclusive right to determine when and if the family residence is listed for sale until July 1, 1993," after which point Joe had that right. It also included terms governing the procedure for selling the property.

Gloria contends not all cotenants were parties because the property settlement agreement was executed between herself and Joe, and did not include the entities that later obtained Joe's one-half interest in the residence (i.e., the Joe Trust and ultimately the Theresa Decanted Trust). However, Joe's entire interest in the property was properly transferred to the Joe Trust, which, by its terms, "own[ed] all incidents of ownership, rights, powers, interests, privileges, and benefits of every kind that may accrue on account of any of the assets of the Trust Estate." That included the right to

11

sell the residence after 1993.  As we have explained, the Joe Trust's one-half interest in the residence was then properly transferred to the Theresa Sub-Trust before decanting to the Theresa Decanted Trust.  Thus, the property settlement agreement bound the cotenants of the residence at the time of the partition action: Gloria and the Theresa Decanted Trust.

For similar reasons, Gloria's assertion that Joe divested his interest in the property settlement agreement by transferring it to the Joe Trust is of no moment, as Joe's former interest passed to the Joe Trust.  Finally, Gloria's argument that the property settlement agreement merely allocated decision-making authority over the residence during her and Joe's lifetimes, and thus did not govern the instant partition action, is similarly unsupported.

In sum, the court did not abuse its discretion in finding the residence was not "heirs property" under UPHPA.  (See former § 874.312, subd. (e)(1).)  Accordingly, Gloria's challenges to the partition judgment are unavailing.

## DISPOSITION

The August 22, 2024 interlocutory judgment is affirmed.  Busch shall recover costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1), (2).)

PETROU, J.

WE CONCUR:

FUJISAKI, Acting P. J.

RODRÍGUEZ, J.

A171532 / *Busch v. Morgan*